IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAULA M. KELLEY and
PATRICIA A. MERSMAN, Special Administrator
of the Estate of Carrie Randolph, Deceased,

    Plaintiffs,

v.

RHONDA RINCK and
OZBURN HESSEY LOGISTICS, LLC,

    Defendants.                                  Case No. 08-cv-360-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

## I. INTRODUCTION

Before the Court is defendant Ozburn Hessey Logistics, LLC's ("Ozburn") Motion for Summary Judgment (Doc. 12), which has been fully briefed by the Parties and is now ripe for ruling. Ultimately, the issue before the Court is whether an employee's intent to deviate on her way home from a work-related event relieves her employer of its *respondeat superior* liability for Plaintiffs' injuries. The Court does not find that Illinois case law squarely indicates that a mere "intent to deviate" would be sufficient to absolve Ozburn of its *respondeat superior* liability.

Thus, what remains is whether defendant Rinck, as Ozburn's employee, had, in fact, deviated from her scope of employment at the time of the vehicular collision. Because the Court finds that questions of material fact exist regarding this issue, summary judgment must be denied.

## II. **BACKGROUND**

Plaintiffs Paula Kelley ("Kelley") and Patricia M. Mersman ("Mersman"), acting as Special Administrator of the Estate of Carrie Randolph ("Randolph"), brought suit against defendants Rhonda Rinck ("Rinck") and Ozburn Hessey Logistics, LLC ("Ozburn"), on the basis of diversity jurisdiction, **28 U.S.C. § 1332**. Plaintiffs' First Amended Complaint (Doc. 26) contains four counts: (1) Kelley's claim for her personal injuries against Rinck; (2) Kelley's claim for her personal injuries against Ozburn, on the basis of *respondeat superior*; (3) the Estate of Carrie Randolph against Rinck for personal injuries resulting in death; and (4) the Estate of Carrie Randolph against Ozburn, on the basis of *respondeat superior*, for personal injuries resulting in death. Since the filing of their First Amended Complaint, the Parties have attended a settlement conference with Magistrate Judge Frazier and informed the Court that plaintiff Kelley has settled her claims with Defendants, but that plaintiff Mersman, as Special Administrator of the Estate of Carrie Randolph, has not (*see* Doc. 45). A Stipulation of Dismissal regarding the partial settlement was filed on May 22, 2009 (*see* Doc. 51).

This suit stems from an automobile collision, occurring on or about March 14, 2006 at approximately 8:36 p.m. on southbound Interstate 55, .38 miles

north of Illinois Route 138, near Mt. Olive, Illinois (Doc. 12, ¶ 15 and Ex. I). The uncontroverted facts show that at the time of the incident, Rinck was employed by Ozburn as a logistics/transportation analyst (*Id*. at ¶ 7). Ozburn's southern Illinois office location is at 1600 Wayne Lanter Boulevard in Madison, Illinois (*Id*. at ¶ 6). Rinck had attended a dinner with her co-workers Bill Maund and Mark Montague at Porter's Restaurant in Collinsville, Illinois, on March 14, 2006. Also in attendance were two representatives from a company called Old Dominion (*Id*. at ¶¶ 9-10). It appears the dinner ended approximately between 7:00 and 7:30 p.m. (*Id*. at 11).

Rinck left Porter's Restaurant in her own personal automobile around 7:30 p.m. (*Id*. at ¶ 14). Approximately one hour later, Rinck was involved in a vehicular collision. The police report indicates that Rinck was traveling *northbound* in the southbound lanes on Interstate 55 when she collided head on with another vehicle heading southbound, driven by Carrie Randolph. Plaintiff Kelley was riding in the passenger seat of Randolph's automobile at the time (*Id*. at ¶¶ 15-16). Randolph died as a result of her injuries from the head-on collision. Plaintiff Kelley claimed severe injuries resulting therefrom (*see* Doc. 26). Rinck was also transported to the hospital for medical attention. She no longer recalls the details of that evening.

That evening, after leaving Porter's Restaurant but before the collision, Rinck called her co-worker and friend, Rodion Safin at approximately 8:00 p.m. and left the following voice mail:

> Hey, Rodion. We are leaving the place where we had to go make our appearance for Bill and Marge[1] and the whole world and we are now on our way to some other place. I still haven't become real sure on where I'm leaving, um where I'm headed. I keep seeing these signs that say Lebannon and I don't know where that is. Warren (one) - water 336 Street. I kind of want to go back to St. Louis. (I tried the one that goes back to St. Louis) is where I'm trying to go but nobody seems to understand that that's where I'm heading. So anyway, if I get back to St. Louis I'm gonna try to go to, uh, whatcha call it? To Soulard and cut up there for a little while if you want to go with me. So the moral to the story, I can tell already is going be if you can find me or head where I am then I can tell you where we gonna go. Cause so far, this ain't it. Okay? Ah, I will talk to you later.

(Doc. 12, Ex. 1 of Ex. K.) Rinck has no recollection of leaving the voice mail or of intending to drive from Porter's Restaurant to Soulard, which is an area south of downtown St. Louis, Missouri, known for its various entertainment venues and restaurants. The discovery provided to the court does not indicate whether the business of the evening was to reconvene elsewhere after the dinner at Porter's Restaurant, as loosely suggested in Rinck's voice mail. At the time of the collision, Rinck resided in an apartment located on Olive and Grand Boulevard in the City of St. Louis, Missouri (Doc. 12, ¶ 3).

### III. <u>DISCUSSION</u>

#### A. Legal Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Oats v. Discovery***

---

[1] Deposition testimony revealed that Rinck had actually said "Mark," not "Marge."

*Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In reviewing a summary judgment motion, this Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in the pleadings; rather, it must be shown through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.

**1994)**.

**B.    Analysis**

Defendant Ozburn, as Rinck's employer, has been sued by Plaintiffs on a theory of *respondeat superior* liability, their theory being that Rinck was attending a "business dinner meeting" on March 14, 2006 at Porter's Restaurant and that the collision occurred while Rinck was driving home from the dinner (Doc. 26, Count IV, ¶¶ 12-15).  Plaintiffs also alleged that Rinck was acting within the scope of her employment duties by attending the dinner meeting (*Id.* at ¶ 13).  Deposition testimony of Rinck's supervisor, Bill Maund, shows that Old Dominion, a motor carrier company, was soliciting Ozburn's business and that the dinner at Porter's Restaurant was for business development purposes (Doc. 20, Ex. 7 - Maund Dep. 11:4-12:14).  Although Rinck was invited to attend, Ozburn contests Plaintiffs' assertion that she was, in any way, required to go as part of her job.  Instead, Ozburn suggests that her attendance was voluntary and for social, rather than business purposes (Doc. 12, ¶ 13).

For the purpose of its Motion, Ozburn states that it will concede that the dinner had a business purpose because regardless of whether attending the dinner was within Rinck's scope of employment, the premise of the Motion is that Rinck had "abandoned any work-related purpose and was carrying on her own social, non-business related purpose at the time she was involved in this accident" (Doc. 29, p. 1).  In other words, the voice mail Rinck left for Safin stating that she was intending to "cut it up" in Soulard after leaving the dinner signifies what Ozburn believes is a

clear deviation from her scope of employment. However, Ozburn admits that if Rinck was, instead, "going straight home" after the dinner and had an accident en route, it would have no right to summary judgment (*Id*. at 2). Thus, Ozburn characterizes the facts as showing that Rinck clearly deviated from her return home in order to go to the Soulard area for social purposes. Plaintiffs, on the other hand, argues that the facts, at most, show Rinck's "intent" to deviate, as the evidence cannot clearly show that Rinck had, in fact, deviated on her route from home in order to go to Soulard.[2] Both Parties admit to the fact that Rinck had become lost after leaving Porter's Restaurant, heading north into Illinois, and therefore, she was not clearly on a direct route to either her residence located in the City of St. Louis or to Soulard, both located south of Porter's Restaurant, in Missouri. Because this case was filed based on diversity jurisdiction, the Court will apply the substantive law of its forum state, Illinois. ***See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938**).

### 1. *Respondeat Superior* Liability Under Illinois Law

Generally speaking, as *respondeat superior*, an employer will be vicariously liable for the torts committed by its employee, but only if the tort is found to be within that employee's scope of employment. ***See Wright v. City of Danville***,

---

[2] Plaintiffs offer Rinck's own deposition testimony, where she testified about recalling a telephone conversation between herself and her father around 3:15 p.m. on the day of the collision, where she told him that she was coming home after the dinner at Porter's because he had prepared dinner and left her puppy outside. Further, Rinck testified that once she was at her apartment that evening, there would have been no going out to Soulard because her apartment building's parking garage was also used as a parking garage for the Fox Theater next door and because there were shows that night, getting back out of her garage would have been crazy (Doc. 24, Ex. 9 - Rinck Dep., 19:14-20:6).

**675 N.E.2d 110, 118 (Ill. 1996) (citing *Pyne v. Witmer*, 543 N.E.2d 1304 (Ill. 1989); Restatement (Second) of Agency § 219 (1958))**. Accordingly, determining whether the tortious act was within an employee's "scope of employment" is crucial in the analysis of whether *respondeat superior* liability exists. If an employee's behavior can be considered a "departure" from his scope of employment – if his actions differ in nature from the type he is authorized to perform for his employer or if they were performed purely for his own interest – then his employer will generally not be liable for its employee's tortious actions. ***Id.* (citing Restatement (Second) of Agency § 228(2) (1958); other citation omitted)**. Although "scope of employment" has not been precisely defined by Illinois law, the Illinois Supreme Court has followed the broad criteria set forth from the Restatement (Second) of Agency:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits;
> >
> > (c) it is actuated, at least in part, by a purpose to serve the master;
>
> ***
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

***Pyne*, 543 N.E.2d at 1308 (citing Restatement (Second) of Agency § 228 (1958))**.

An employee's travels to and from his workplace outside of his actual working hours is not considered as being within the scope of employment unless the employee is caused by his employer "to travel away from a regular workplace or whose travel is at least partly for [his] employer['s] purposes rather than simply serving to convey the employee[] to or from a regular jobsite." **Id. at 1307**. Moreover, an employer will not be vicariously liable for an employee's "frolic (pursuit of an employee's personal business seen as unrelated to employment) . . . [unless and until the] employee abandons a frolic and reenters the scope of employment." **Id. at 1309 (citation omitted)**. An employee's "slight and not unusual" deviation from one's course of employment can be construed as still acting within the scope of employment. However, an employee's "exceedingly marked and unusual" deviation will generally be considered as outside of the scope of employment. **Id. (citations omitted)**. When situations present themselves where an employee's deviation is neither "slight and not unusual" nor "exceedingly marked and unusual," but somewhere in between, "or where the surrounding facts and circumstances leave room for legitimate inferences as to whether, despite the deviation, the employee was still engaged in the employer's business, is a question for the jury." **Id. (citations omitted)**. Therefore, the Illinois Supreme Court has found that "[s]ummary judgment is generally inappropriate when scope of employment is at issue." **Id. at 1308 (finding summary judgment only proper when "no reasonable person could conclude from the evidence that an employee was acting within the course of**

**employment") (citations omitted)**.

### 2. Whether Rinck Was Acting Within Scope of Employment

For the purposes of the instant summary judgment motion, the Parties do not dispute that the dinner at Porter's Restaurant was business related in that Rinck attended for the purpose of benefitting her employer, Ozburn. The Parties also agree, for the purposes of the Motion, that Rinck was clearly lost and driving *away* from both her residence and the Soulard area of St. Louis at the time of the vehicular collision with Plaintiffs. Bearing this in mind and from the evidence before the Court, it cannot conclusively determine whether Rinck had, in fact, actually deviated from her scope of employment. There is no way of determining whether she was simply heading home after the dinner at Porter's Restaurant or whether she had, prior to the collision, been attempting to head to Soulard for social purposes. At best, the evidence indicates Rinck expressed an "intent" to go to Soulard after leaving Porter's Restaurant.

However, neither the Parties' briefs nor the Court's own research point to precedential case opinions holding that an "intent to deviate" is equivalent, under Illinois law, to an actual deviation. As explained by the Illinois Supreme Court in ***Pyne***, even an actual deviation will not always be considered sufficient to absolve an employer of liability. Therefore, the Court does not believe that Illinois law would hold that a mere "intent to deviate" would be enough to absolve Ozburn of its *respondeat superior* liability. **See, e.g., Holmes v. Village of Hoffman Estates,**

**511 F.3d 673, 683 (7th Cir. 2007) (when federal court must apply Illinois law and there are "gaps in the pertinent case law," the federal court must attempt to predict what the Illinois Supreme Court would hold) (citation omitted)**. Yet, the Court also cannot affirmatively state that Ozburn must be held liable for Rinck's actions as a question of material fact remains regarding whether Rinck actually acted upon her "intent" to go to Soulard for social purposes. Because she was lost at the time of the collision and because she does not remember the night in question, it is not for the Court to decide whether Rinck had, prior to the collision, definitely deviated from her route home in order to go to Soulard. Even if she had decided to go to Soulard when she left the voice mail on Safin's cell phone, she may have realized she was too lost and decided simply to return home once she found her way. *See Pyne*, **543 N.E.2d at 1311 ("[A]n intention to return from any frolic could have existed even if Witmer was lost or confused about direction at the time of the accident, as long as it was his desire and endeavor to proceed homeward.")**. If so, this could possibly constitute a "reentry into the scope of her employment." These are questions for the trier of fact to determine, thus making the matter inappropriate for summary judgment.

## IV. CONCLUSION

For the reasons discussed herein, defendant Ozburn Hessey Logistics, LLC's Motion for Summary Judgment (Doc. 12) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 27th day of May, 2009.

/s/     *DavidRHerndon*

**Chief Judge**
**United States District Court**